IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE VRDOLJAK, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 21 C 1574 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bonnie Vrdoljak's claim for disability insurance benefits was denied. (Dkts. 1, 12). She seeks judicial review of the administrative law judge's (ALJ) finding that she could perform certain jobs despite her environmental limitations. (Dkt. 12). She also challenges the ALJ's assessment of her residual functional capacity. (*Id.*) For the reasons below, the Court affirms in part and vacates in part the ALJ's findings and remands the case to the Social Security Administration for further proceedings. (Dkt. 20).

## BACKGROUND

Bonnie Vrdoljak suffers from arthritis in all her major joints, asthma, high blood pressure, swelling in her left leg, depression, and gastroesophageal reflux disease (GERD). (Dkt. 11-1 at 193). Vrdoljak is of advanced age, has a tenth-grade education, and previously worked as a mail clerk and messenger. (*Id.* at 33, 49, 68, 194). She applied for disability insurance benefits on June 18, 2018, alleging a disability onset date of January 12, 2018. (*Id.* at 17, 180–81, 194). After Vrdoljak's application was denied initially and on reconsideration, (*Id.* at 82, 92), she received a

1

hearing before ALJ Roxanne Kelsey in June 2020. (*Id.* at 39–72). The ALJ denied benefits, and the Appeals Council denied review. (*Id.* at 5–7, 34).

### Hearing Before the ALJ

The ALJ held a hearing on June 30, 2020, in which Vrdoljak and vocational expert Lee Knutson testified. (*Id.* at 41–68). Vrdoljak testified that she takes medication for her anxiety or depression, which helps with her symptoms. (*Id.* at 63–64). She explained, however, that the medication is sometimes "ineffective." (*Id.* at 64). As a side effect from her medication, Vrdoljak testified that she experiences tiredness. (*Id.* at 56). Vrdoljak further testified that she suffers from random panic attacks every two or three weeks, which usually go away after taking medication and lying down for about an hour. (*Id.* at 64).

Examining the vocational expert, the ALJ asked about the work capability of a hypothetical person with advanced age and a tenth-grade education who could perform medium, unskilled work but "should avoid concentrated exposure to extreme cold, extreme heat, . . . concentrated levels of humidity[, and] . . . dust, fumes, or gases." (*Id.* at 68–69). That hypothetical person, the vocational expert opined, could work as a dining room attendant, dye-weigher helper,[1] or hand packager. (Dkt. 11-1 at 69); *see* U.S. Dep't of Labor, *Dictionary of Occupational Titles* (DOT), §§ 311.677-018, 550.687-018, 920.587-018 (4th ed. 1991).

According to the DOT, a dining room attendant:

Performs any combination of following duties to facilitate food service: Carries dirty dishes from dining room to kitchen. Wipes table tops and chairs, using damp cloth. Replaces soiled table linens and sets tables with silverware and glassware. Replenishes supply of clean linens, silverware, glassware, and dishes in dining room. Supplies service bar with food, such as soups, salads, and desserts. Serves ice water and butter to patrons. Cleans and polishes glass shelves and doors of service bars and equipment, such as coffee urns and cream and milk dispensers. Makes coffee and fills fruit juice dispensers. May sweep and mop floors.

---

[1] The parties agree that the vocational expert and ALJ referred to this job by the wrong title. (Dkt. 12 at 4; Dkt. 21 at 4 n.3).

DOT § 311.677-018. The job of a dining room attendant involves no exposure to extreme cold, extreme heat, humidity, toxic caustic chemicals, or other environmental conditions. *Id.* The ALJ found that there are approximately 76,000 dining room attendant jobs in the national economy. (Dkt. 11-1 at 34).

The DOT defines a dye-weigher helper's role as follows:

Assists . . . in mixing dyes and chemicals for use in dyeing textile yarns and fabrics: Opens steam valve to heat dye solution. Stirs solution with paddle to dissolve dye. Dumps contents of mixing pails into or turns valve to transfer dye solution to supply tanks in dyeing department in response to light signal or to request over speaker system. Moves barrels of dye and chemicals to dye room, using handtruck. Cleans mixing tanks and work area, using waterhose.

DOT § 550.687-018. A dye-weigher helper has frequent exposure to humidity and occasional exposure to other environmental conditions. *Id.* The ALJ found that there are around 58,000 dye-weigher helper jobs in the national economy. (Dkt. 11-1 at 34).

Per the DOT, a hand packager:

Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged.

DOT § 920.587-018. A hand packager faces frequent exposure to extreme heat. *Id.* The ALJ found that there are approximately 231,000 hand packager jobs in the national economy. (Dkt. 11-1 at 34).

The ALJ did not pose any questions to the vocational expert about mental limitations. (*Id.* at 68–70). Cross-examining the vocational expert, Vrdoljak's counsel only asked about off-task time, unscheduled absences, and leg elevation. (*Id.* at 70–71).

**ALJ's Decision**

The ALJ applied the required five-step analysis under 20 C.F.R. § 404.1520(a). (*Id.* at 13–30); *see Zellweger v. Saul*, 984 F.3d 1251, 1253 (7th Cir. 2021). The ALJ found, at step one, that Vrdoljak had not engaged in substantial gainful activity since January 12, 2018. (Dkt. 11-1 at 19). At step two, the ALJ found that Vrdoljak's reactive airway disease or asthma secondary to environmental sensitivities, hypertension, heart murmur, lymphedema, Raynaud's phenomenon, and obesity were severe impairments, while her obstructive sleep apnea, depression, and migraine headaches were not severe. (*Id.* at 20–23). Further, Vrdoljak's depression caused mild limitations in her abilities to understand, remember, or apply information; to interact with others, concentrate, persist, or maintain pace; and to adapt or manage herself. (*Id.* at 22–23). The ALJ noted that Vrdoljak reported "feel[ing] afraid to leave her home" due to her asthma attacks. (*Id.* at 22).[2] At step three, the ALJ determined that Vrdoljak's impairments did not equal a listed impairment under 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (*Id.* at 23).

At step four, the ALJ determined Vrdoljak's residual functional capacity (RFC) and found that she could not perform any of her past relevant work. (*Id.* at 33). Vrdoljak's RFC allowed her to perform medium work while "[a]voiding concentrated exposure to extreme heat, extreme cold, concentrated levels of humidity[,] and . . . dust, fumes, or gases." (*Id.* at 29). Despite finding mild mental limitations at step two, the ALJ did not include any mental limitations in Vrdoljak's RFC.

---

[2] Despite Vrdoljak's fear of leaving the house, ALJ found that her limitation in her ability to adapt or manage herself was mild because she "had been able to leave her home to tell her primary care provider about that problem, which suggested that she had been able to control her response to those feelings of anxiety." (*Id.* at 23).

(*Id.* at 29–33). The ALJ noted that the record did not support Vrdoljak's testimony of experiencing panic attacks. (*Id.* at 31). Further, Vrdoljak appeared "quite functional," testified to living alone without help, was able to drive and shop for groceries. (*Id.* at 31). Nonetheless, the ALJ explained that the medical opinions of Dr. Michael Cremerius and Dr. Russell Taylor were "persuasive" in supporting a finding of mild mental limitations. (*Id.* at 32, 78–79, 89–90). The ALJ then decided that Vrdoljak "retained the ability to work at a medium level of exertion—as restricted by the limitations presented above." (*Id.* at 32).[3]

Finally, at step five, the ALJ relied on the vocational expert's testimony to find that Vrdoljak could work as a dining room attendant, dye-weigher helper, or hand packager—jobs that exist in significant numbers nationally. (*Id.* at 33–34). Thus, the ALJ concluded that Vrdoljak was not disabled and denied her benefits claim. (*Id.* at 34). The Appeals Council denied Vrdoljak's request for review. (*Id.* at 5–7). In this action, Vrdoljak challenges the ALJ's decision. (Dkts. 1, 12). The Acting Commissioner of Social Security now moves for summary judgment. (Dkt. 20).

## LEGAL STANDARD

On judicial review, an ALJ's factual findings "shall be conclusive" if supported by "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). This means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154. This is not a high threshold. *Id.* There must be "an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). The Court does not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

---

[3] The ALJ noted earlier in the decision that "the combined effects of the claimant's severe and non-severe impairments were considered when assessing residual functional capacity." (Dkt. 11-1 at 23).

## DISCUSSION

Vrdoljak challenges the ALJ's decision on three grounds, arguing that: (1) the ALJ's step-five analysis ignored an apparent conflict; (2) the ALJ failed to account for Vrdoljak's mental limitations; and (3) the adjudicative process was unconstitutional as a separation-of-powers violation. (Dkt. 12 at 3–11). Since the Court agrees that Vrdoljak's second argument points out an error requiring remand, the Court does not reach her third argument.

### A.     ALJ's Step-Five Finding

Vrdoljak argues that the ALJ's step-five determination ignored an apparent conflict. (*Id.* at 3–5). Specifically, Vrdoljak contends that the ALJ's RFC finding that Vrdoljak should avoid certain environmental conditions contradicted the finding that she could work as a dining room attendant, dye-weigher helper, or hand packager—jobs which she claims require exposure to the same environmental conditions. (*Id.* at 3–4). Social Security Ruling (SSR) 00-4p requires ALJs "to investigate and resolve apparent conflicts between vocational experts and the DOT." *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (citing SSR 00-4p). Faced with an apparent conflict, "the ALJ's affirmative duty extends beyond merely asking the [vocational expert] whether his testimony is consistent with the DOT; the ALJ must 'elicit a reasonable explanation for any discrepancy.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)).

Since Vrdoljak failed to object at the hearing, she must show "that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance." *Surprise*, 968 F.3d at 662 (quoting *Overman*, 546 F.3d at 463); *see, e.g.*, *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (explaining that a conflict was obvious where the vocational expert testified that the claimant "could find sedentary work as a food preparer, lobby attendant, assembler, or

office helper," while the DOT classified those jobs "as light work"); *Prochaska*, 454 F.3d at 736 (remanding where the vocational expert pointed to jobs that the DOT defined as "requir[ing] specific physical capabilities that [were] beyond [the claimant's] limitations").

There is no apparent conflict between Vrdoljak's RFC and the job of dining room attendant. According to the DOT, a dining room attendant "[w]ipes table tops and chairs, using damp cloth," "[c]leans and polishes glass shelves and doors of service bars and equipment," and "may sweep and mop floors." DOT § 311.677-018. The DOT further describes the dining room attendant job as requiring no exposure to extreme cold, extreme heat, humidity, toxic caustic chemicals, or other environmental conditions. *Id.* From the DOT's description, it is not obvious that the cleaning responsibilities of a dining room attendant would require "concentrated exposure to dust, fumes, or gases." (*See* Dkt. 11-1 at 29). If there is any conflict between Vrdoljak's environmental limitations and the responsibilities of a dining room attendant, it is not so obvious "that the ALJ should have picked up on [it] without any assistance." *See Surprise*, 968 F.3d at 662.

The story is different, however, with respect to the dye-weigher helper and hand packager jobs. A dye-weigher helper assists "in mixing dyes and chemicals," "[o]pens steam valve to heat dye solution," "[s]tirs solution with paddle to dissolve dye," "[d]umps contents of mixing pails into or turns valve to transfer dye solution to supply tanks," "[m]oves barrels of dye and chemicals," and "[c]leans mixing tanks and work area, using waterhose." DOT § 550.687-018. In addition, a dye-weigher helper must weather frequent exposure to humidity and occasional exposure to other environmental conditions. *Id.* It should have been apparent to the ALJ that the DOT's description of the dye-weigher helper job clashes with Vrdoljak's environmental limitations. What is not obvious is how Vrdoljak could "avoid[] concentrated exposure to . . . concentrated levels of humidity" in a job that requires frequent exposure to humidity. (*See* Dkt.

7

11-1 at 29). The responsibilities of mixing, stirring, and moving dyes and chemicals and cleaning mixing tanks seem likely to expose dye-weigher helpers to fumes or gases, which Vrdoljak should also avoid. The ALJ's failure to tease out "a reasonable explanation for the apparent conflict" was therefore error. *See Overman*, 546 F.3d 463 (quoting SSR 00-4p).

Similarly, the DOT describes the hand packager job as requiring frequent exposure to extreme heat—in obvious tension with Vrdoljak's need to avoid concentrated exposure to extreme heat. *See* DOT § 920.587-018; (Dkt. 11-1 at 29). Since this conflict appears obvious, the ALJ erred by failing to "elicit a reasonable explanation." *Overman*, 546 F.3d at 463 (quoting *Prochaska*, 454 F.3d at 735).

Nonetheless, these errors are harmless. The ALJ found that there are approximately 76,000 dining room attendant positions in the national economy—a job Vrdoljak could perform without offending the environmental limitations in her RFC. *See, e.g.*, *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016) (finding harmless error despite an apparent conflict because there remained 5,303 appropriate jobs for the claimant); *see also Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (the existence of 1,000 jobs nationally is sufficient at step five). Thus, the ALJ's failure to resolve the apparent conflicts with respect to the dye-weigher helper and hand packager jobs does not require remand.

## B. ALJ's RFC Assessment of Mental Limitations

Next, Vrdoljak argues that the ALJ erred by failing to (1) ask the vocational expert hypothetical questions based on her mild mental limitations; and (2) incorporate the limitations into her RFC. (Dkt. 12 at 5–9; Dkt. 25 at 3–4). The Court agrees. In assessing a claimant's RFC, the ALJ must determine "what an individual can still do despite . . . her limitations based upon medical evidence as well as other evidence, such as testimony by the claimant or [her] friends and

family." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (cleaned up and internal citations omitted). "[B]oth the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). While "[t]he ALJ need not use any 'magic words,'" *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (quoting *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)), "the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Murphy*, 759 F.3d at 817). The ALJ must account for all limitations because "someone with problems concentrating," for example, "might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Id.* (quoting *Martin v. Saul*, 950 F.3d 369, 373–74 (7th Cir. 2020)); *see, e.g.*, *Lockett v. Saul*, 834 F. App'x 236, 238–39 (7th Cir. 2020) (ALJ adequately accounted for moderate mental limitations by including restrictions on work complexity in the claimant's RFC).

Here, the ALJ credited medical opinions in finding that Vrdoljak's depression caused mild limitations in her abilities to understand, remember, or apply information; to interact with others, concentrate, persist, or maintain pace; and to adapt or manage herself. (Dkt. 11-1 at 22–23, 32). Yet, the ALJ did not pose any hypothetical questions about Vrdoljak's specific mental limitations to the vocational expert. By omitting Vrdoljak's mental limitations from the hypotheticals, the ALJ provided an unreliable baseline for the vocational expert's testimony. *See Crump*, 932 F.3d at 570 ("When the ALJ supplies a deficient basis for the [vocational expert] to evaluate the claimant's impairments, this error necessarily calls into doubt the [vocational expert's] ensuing assessment of available jobs.").

While "magic words" evoking Vrdoljak's mental limitations were not required, the ALJ's references to Vrdoljak's tenth-grade education and capacity to perform "unskilled work" did not do the trick. *See Varga*, 794 F.3d at 814–15 (explaining that "'unskilled work,' which the regulations define as work that can be learned by demonstration in less than 30 days," does not relate "to the question of whether an individual with mental impairments—*e.g.*, with difficulties maintaining concentration, persistence, or pace—can perform such work" (citing 20 C.F.R. §§ 404.1568, 404.1520)); *Crump*, 932 F.3d at 570 ("[T]he ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace."). The ALJ's failure to pose hypotheticals "incorporat[ing] *all* of [Vrdoljak's] limitations supported by the medical record" was, by itself, reversible error. *See Varga*, 794 F.3d at 814.

The ALJ further erred in failing to explain why Vrdoljak's mental limitations did not factor into her RFC. The ALJ noted that Vrdoljak presented as functional, lived alone, and could drive and shop for groceries without help. (Dkt. 11-1 at 31). But the ALJ did not build the necessary "logical bridge" between the evidence of Vrdoljak's mental limitations and the conclusion that those limitations required no restrictions in her RFC. *See Lothridge*, 984 F.3d at 1233 (quoting *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ did not build the necessary bridge by asserting, for instance, that "the combined effects of the claimant's severe and non-severe impairments were considered when assessing residual functional capacity." (*See id.* at 23). Such boilerplate language does not "connect the dots" in explaining why Vrdoljak's mental limitations do not affect her capacity to perform medium unskilled work. *See Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022).

The Commissioner leans on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019), which is distinguishable. There, the ALJ posed hypotheticals to a vocational expert which included restrictions based on the claimant's moderate mental limitations. *Id.* at 495. The ALJ also "credited [the claimant's] testimony and included accommodations for [his] 'mild mental functional impairment' in the RFC assessment." *Id.* at 497–98. The *Jozefyk* Court went on to explain that any flaws in an ALJ's RFC assessment were harmless since the claimant "did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record [did] not support any." *Id.* at 498. It was therefore "unclear what kinds of work restrictions might address [the claimant's] limitations in concentration, persistence, or pace because he hypothesize[d] none." *Id.* The facts here are different.

Unlike in *Jozefyk*, the ALJ relied on the medical record in acknowledging that Vrdoljak's depression caused mild mental limitations. *See Crump*, 932 F.3d at 571 (distinguishing *Jozefyk*). Vrdoljak testified that her medication is not always effective at controlling her depression symptoms, which include tiredness—testimony that was consistent with the medical record. *See id.*; *cf. Jozefyk*, 923 F.3d at 498 (noting an absence of "evidence-based restrictions that the ALJ could include in a revised RFC finding on remand"). The ALJ also noted Vrdoljak's fear of leaving the house. Thus, on remand, the ALJ could consider whether Vrdoljak's depression-related mental limitations, including her tiredness, impair her ability "to work for a sustained period." *See Crump*, 932 F.3d at 571. The ALJ could also consider whether Vrdoljak's fear of leaving the house—however mild—affects her ability to timely and consistently go to work.

The Court does not suggest that the ALJ had an obligation to imagine a restriction for each of Vrdoljak's mild limitations. The primary problem is a dearth of explanation. The ALJ was thorough in tying the medical record and Vrdoljak's testimony to a finding that her mental

limitations were mild—as opposed to severe. (*See* Dkt. 11-1 at 20–23; 32). But the ALJ did not articulate why those mild limitations required no restrictions.

In sum, the ALJ erred in omitting Vrdoljak's mental limitations from the hypothetical questions she posed to the vocational expert. The ALJ erred further in failing to explain why those limitations did not factor into the RFC assessment. Since these errors require remand, the Court does not reach Vrdoljak's constitutional challenge.

## CONCLUSION

For the reasons above, the Court denies the Commissioner's Motion for Summary Judgment. (Dkt. 20). The Court affirms the ALJ's finding at step five that the job of dining room attendant does not conflict with Vrdoljak's environmental limitations. The Court vacates the ALJ's RFC assessment because the ALJ (1) failed to incorporate Vrdoljak's mental limitations in questioning the vocational expert; and (2) failed to explain why her mental limitations required no restrictions. The Court remands to the Social Security Administration for further proceedings consistent with this Opinion.

Virginia M. Kendall
United States District Judge

Date: March 28, 2023